U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 AUG -8 PM 2: 10

CLERK
BY_____(tw)\_\_\_\_\_
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

WEI WANG, GUANGYI XIONG, )
XIOFENG FENG )
)
    Plaintiffs, )
)
v. ) Case No. 2:17-cv-00153
)
JIANMING SHEN, SHENLAW, LLC, )
)
    Defendants. )

**ENTRY ORDER DENYING PLAINTIFFS' MOTION TO COMPEL PREVIOUSLY SUBPOENAED DEPOSITIONS OF THIRD-PARTY WITNESSES, GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL THE CONTINUATION OF THE DEPOSITION OF BRENT RAYMOND, DENYING PLAINTIFFS' MOTION TO PROHIBIT THE STATE OF VERMONT FROM INTERFERING WITH A SUBPOENA DUCES TECUM ISSUED TO ANOTHER THIRD PARTY, AND GRANTING IN PART AND DENYING IN PART THE STATE OF VERMONT'S MOTION FOR A PROTECTIVE ORDER**
(Docs. 92 & 98)

    Plaintiffs Wei Wang, Guangyi Xiong, and Xiofeng Feng (collectively, "Plaintiffs") bring this action against Defendants Jianming Shen and ShenLaw, LLC (collectively, the "Shen Defendants") alleging legal malpractice; breach of contract; breach of the implied covenant of good faith and fair dealing; violations of Sections 10(b) and 10b-5 of the Securities Exchange Act; unfair and deceptive practices in violation of the Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451-2482j; and breach of fiduciary duty.

    Pending before the court is Plaintiffs' March 22, 2019 motion to compel previously subpoenaed depositions of third-party witnesses, to compel the continuation of the deposition of former Vermont EB-5 Regional Center ("VRC") Executive Director Brent Raymond, and to prohibit the State of Vermont from interfering with a subpoena duces tecum issued to another third party. (Doc. 92.) On behalf of former Governor Peter Shumlin, former Agency of Commerce and Community Development ("ACCD")

Secretary Lawrence Miller, former ACCD Secretary Patricia Moulton, former ACCD Capital Investment Coordinator James Candido, ACCD General Counsel John Kessler, and former Director Raymond, the State of Vermont opposed the motion to compel depositions, to continue former Director Raymond's deposition, and to prohibit interference with a third-party subpoena on April 5, 2019. The State of Vermont also moved for a protective order with regard to former Director Raymond's continued deposition. (Doc. 98.) Plaintiffs replied and opposed the protective order on April 29, 2019, at which time the court took the pending motions under advisement.

Plaintiffs are represented by Russell D. Barr, Esq., and Chandler W. Matson, Esq. Defendants are represented by Andrew H. Montroll, Esq. The State of Vermont is represented by Assistant Attorneys General Jon T. Alexander, William E. Griffin, and Kate T. Gallagher.

I.  **Factual and Procedural Background.**

   A.  **The Allegations of the Third Amended Complaint.**

Plaintiffs are individuals who sought to invest and reside in the United States pursuant to the United States Citizenship and Immigration Services ("USCIS") employment-based fifth preference ("EB-5") visa program. This program authorizes foreign investors who have invested capital in a commercial enterprise in the United States to file an I-526 Petition requesting conditional permanent residency status for a two-year period. An I-526 Petition requires a petitioner to acquire and supply evidence that the chosen EB-5 investment project will create ten full-time positions for qualifying employees. If the foreign investor satisfies certain criteria, he or she may apply to have the conditions removed from his or her visa in order to permanently live and work in the United States.

Jianming Shen is an attorney who is the managing partner and president of ShenLaw LLC which has its principal place of business in New York. ShenLaw LLC handles transactions for immigrant investors through the EB-5 program. Attorney Shen allegedly "holds himself out to be an experienced EB-5 attorney with a nationwide presence." (Doc. 67-1 at 8, ¶ 24.)

Plaintiffs contend that Attorney Shen directed them to invest in the Jay Peak Projects and, on multiple occasions, authored, procured, and disseminated advertisements to foreign investors in which he endorsed the Jay Peak Projects as being one of the best EB-5 enterprises in the United States with a 100% I-526 Petition approval rate. More specifically, Attorney Shen allegedly directed approximately seventy clients, including Plaintiffs, to invest in Phase VII of the Jay Peak Projects which included the Jay Peak Biomedical Research Park L.P.

Plaintiff Feng retained Attorney Shen in December 2013, although Attorney Shen maintains that Plaintiff Feng did not pay his retainer or bills for legal fees. Plaintiff Wang retained Attorney Shen in May 2014 and paid approximately $18,000 in legal fees and filing costs to the Shen Defendants. Plaintiff Xiong retained Attorney Shen in March 2016 and paid approximately $14,500 in legal fees and filing costs to the Shen Defendants.

After retaining Attorney Shen, Plaintiffs received the investment offering documents for Phase VII. The offerings required each Plaintiff to make a capital contribution of $500,000 and pay a separate administrative or management fee of $50,000 which was used to pay fees and expenses incurred by the promoters, including the payment of alleged commissions and finder's fees. Each Plaintiff complied with these requirements and transferred $550,000 to the Phase VII promoters.

Attorney Shen allegedly "explicitly assured" Plaintiffs that he would assist with the necessary due diligence and ensure the "immigration suitability" of the Jay Peak Projects; however, he allegedly did not conduct any due diligence regarding Plaintiffs' investments. *Id.* at 13, ¶ 56. Plaintiffs assert that "[t]he most basic and standard legal due diligence would have revealed that [Plaintiffs] were throwing their money into a complete sham." *Id.* at 14, ¶ 60. Attorney Shen did not request financial information regarding how EB-5 investor funds were spent, and the Jay Peak Projects did not disclose that information. In 2012, public allegations of wrongdoing by the Jay Peak Projects promoters emerged. By May 2014, a group of twenty investors had complained about the misappropriation of investor funds.

3

Phase VII did not obtain approval from the U.S. Food and Drug Administration for the research center's products—a prerequisite for the operation of Phase VII and the use of Plaintiffs' investment funds. Phase VII's parent company, AncBio, was ultimately sold at auction in May 2014 to satisfy its creditors. Plaintiffs allege that Attorney Shen failed to inform them of wrongdoing at the Jay Peak Projects because he was receiving direct and indirect compensation in exchange for referring foreign investors to those EB-5 projects.

As a result of the Shen Defendants' acts and omissions, Plaintiffs allege that they have "lost their initial investment, their initial path to immigration in the United States, their administrative fees, and the fees paid to [Attorney] Shen." *Id.* at 17-18, ¶ 82. Through separate litigation, the federally appointed receiver of the Jay Peak Projects secured a settlement from which each Plaintiff was offered $500,000. Plaintiffs Wang and Feng each accepted the $500,000, while Plaintiff Xiong did not.

### B.     Depositions of State of Vermont Officials.

In their Answer to Plaintiffs' initial Complaint, the Shen Defendants alleged, among other things, the following affirmative defense: "Defendants reasonably relied upon the representations of officials of the State of Vermont" ("Affirmative Defense No. 18"). (Doc. 3 at 14, ¶ 18.) Plaintiffs assert that in order to probe the veracity of Affirmative Defense No. 18 and to counter it, they issued deposition subpoenas to various state officials involved with the Jay Peak Projects and the VRC, including Attorney Kessler, former Director Raymond, former Capital Investment Coordinator Candido, former Secretary Miller, former Secretary Moulton, and former Governor Shumlin.

On August 20, 2018, Plaintiffs deposed former Director Raymond, who testified that he did not remember meeting Attorney Shen. The deposition ended early because former Director Raymond had to attend to a childcare responsibility. The parties agreed to continue the deposition on another day, although the terms of that agreement are disputed.

4

On August 27, 2018, the State of Vermont filed a motion to quash the subpoena for Attorney Kessler's deposition and for a protective order. On October 19, 2018, the State of Vermont filed a motion to quash subpoenas for depositions of former Secretary Miller, former Secretary Moulton, and former Capital Investment Coordinator Candido and for a protective order. Plaintiffs opposed both motions.

At a hearing on November 5, 2018, the court granted in part and denied in part the State of Vermont's motions to quash, holding that:

> All discovery related to the Depositions of State Officials will not take place until Mr. Shen has been deposed. The court finds that the relevance of discovery sought from deponents is cabined by the scope of Defendant Shen's defense. Attorney Kessler is not de facto opposing counsel and any privilege must be asserted by him on a question by question basis. The court is likely to issue a protective order regarding the scope of discovery.

(Doc. 60.)

On January 22, 2019, Attorney Shen was deposed. He stated that, in directing clients to invest in Jay Peak Projects, he relied upon marketing materials that he obtained from Jay Peak Projects as well as on "the level of support [the VRC] gave to Jay Peak [Projects] throughout the years." (Doc. 92-11 at 19.) Attorney Shen stated that he also relied upon speeches made by State officials at a 2009 conference and at 2013 seminars held in China. For example, in response to questions posed by Plaintiffs' attorney, he responded as follows:

> A.   The first trip was in 2009 actually. I had my own agenda. I went to participate in a conference organized by one immigration service company in Be[i]jing. It was a huge event. There were dozens of project companies showing up, to my surprise. I didn't expect since it was—
>
> Q.   But you had no interaction with the Vermont Regional Center or Bill Stenger at that point?
>
> A.   I did see them. They were in the audience when I spoke. I was one of the speakers. I was only speaking about the legal aspects of immigration petition filings. And they were there. They clapped and—
>
> Q.   Who is they?
>
> A.   Bill Stenger and Douglas Hulme. And a few others on his team. I forgot who the—who the people are. But not just the two of them.

5

Q. And then the next trip, the next trip?

A. I have trips to China each year. But the next trip

Q. I'm talking about only with regard to Jay Peak. You traveled with Jay—

A. No, I didn't travel with them. The second trip with them together—I mean the second trip where I met them, was the trip in September, late September, 2013.

Q. And that's where you were on vacation?

A. Yes. I booked my vacation tickets much earlier in April of that year.

Q. Okay. And how much of that trip did you—how many days did you travel with Jay Peak?

A. Altogether, oh with them, just let's say in Be[i]jing just one day, although I stayed in Be[i]jing for two nights. I stayed on my own. And in Shanghai one day. And in Shenzhen one day. Just three days altogether.

Q. You were with them for three days. What were they doing while they were there?

A. They were holding seminars for Jay Peak specifically. And –

Q. Who from the state was there with them?

A. I saw the Governor, Governor Shumlin. How do you pronounce?

Q. Shumlin.

A. Shumlin. And the Secretary of the Agency for Community Development.

Q. Lawrence Miller.

A. If that's his name. And also the Senator, both Senators. Senator Sanders and Senator Leahy. . . . And also the Congressman. They were all there.

Q. Okay. And then also who else from the Vermont Regional Center? Brent Raymond?

A. I saw several other people on their team. But I don't remember people's name and even face.

Q. So did you translate? I think at some point you said you—

. . .

A. For—I did translation interpretations, not translations, on-the-spot interpretations for, I believe, Mr. Miller and also for two other speakers. I forgot.

. . .

Q. Okay. But you don't recall—Brent Raymond was on that trip.

A. Who is he?

Q. He's a tall guy about 6'1". Kind of husky. He was in charge—he was the Executive Director.

A. Of the?

Q. Of the Regional Center.

A. Then who is the secretary at that time?

Q. Lawrence Miller. So Lawrence was the secretary of the ACCD.

A. Yeah. He was there.

Q. And then you had the head of the Vermont Regional Center which was Brent Raymond.

A. Yeah. There were several other people under him. But I don't remember who was responsible for—

. . .

Q. Okay. So Brent was there too. You just don't—so your job was to translate communications?

A. To do some of the interpretations.

Q. Interpretations between potential investors and Jay Peak?

A. No. For the speeches.

. . .

Q. So this must have made you feel more comfortable about putting investors in—

A. One of the reasons.

Q. Okay. So that certainly helped. And the statements that were made while they were there was that they had government oversight?

A. Yes.

(Doc. 92-13 at 14-18.)

Plaintiffs' counsel also asked Attorney Shen the following:

Q. Okay. Did you reach out to anyone at the Vermont Regional Center—you must have reached out to someone at the Vermont Regional Center to talk to them about this?

A. No. I only talked to Bill. Not—

7

> Q. No one else?
>
> A. Not the Regional Center people. I never had any direct communications with them.

(Doc. 92-12 at 13.) With regard to Attorney Kessler, Plaintiffs' counsel asked Attorney Shen: "So you met with [Attorney Kessler], I'm sure. You've seen him and talked to him?" to which Attorney Shen responded: "I may have seen him on the trip to Be[i]jing, but I even don't remember what he looked like." (Doc. 92-12 at 18.) With regard to former Capital Investment Coordinator Candido, Attorney Shen stated that on one occasion in 2009 he attempted to call him, but the call was unanswered. The State of Vermont attached declarations from former Capital Investment Coordinator Candido, former Governor Shumlin, and former Secretary Moulton, in which all three individuals aver that they do not recall having any communications with Attorney Shen.

### C. The Damian & Valori LLP Subpoena.

On September 27, 2018, Plaintiffs issued a subpoena to Damian & Valori LLP ("D&V"), a law firm that served as legal counsel to Ariel Quiros in civil enforcement actions brought against him by the Securities and Exchange Commission ("SEC") and the State of Vermont. Plaintiffs requested that D&V produce the following: (1) "any and all transcripts of investigative testimony given before the SEC related to Case No. 16-21301-cv-Gayles"; (2) "any and all documents produced by the State of Vermont related to SEC Case No. 16-21301-cv-Gayles"; and (3) "any and all documents produced by the State of Vermont related to Vermont Civil Docket No. 217-4-16 Wncv." (Doc. 92-9 at 8.)

Plaintiffs' attorney was informed by counsel at D&V that the documents requested pursuant to the subpoena were subject to a confidentiality agreement. During a phone conference with D&V, Plaintiffs' attorney alleges that he was "informed that the State of Vermont interfered with [D&V's] full compliance with the [D&V] Subpoena because the State would not consent to the disclosure of the requested documents due to the confidentiality agreement." (Doc. 92-1 at 11.) Plaintiffs' attorney states that he sent an email to D&V on February 27, 2019, offering to execute a similar confidentiality

8

agreement once the documents were disclosed, however, D&V did not respond to that email.

The State of Vermont asserts that on or about March 27, 2019, Assistant Attorney General ("AAG") Kate T. Gallagher sent a letter to the Receiver, Michael I. Goldberg, Esq., and copied D&V Attorney Melissa Visconti among others, notifying Attorney Goldberg that Plaintiffs' subpoena to D&V sought, in part, State-produced Jay Peak documents that "may contain attorney-client privileged communications." (Doc. 98-4 at 1.) The State of Vermont also wrote to Attorney Visconti, stating: "You had asked the State to consent to production of the State's documents to [Attorney] Barr without removing the personally identifiable information contained in the documents, which we declined to do." (Doc. 98-5 at 1.) The State of Vermont states that it recently made public many of the documents that Plaintiffs have requested from D&V, noting that "the State has posted at http://eb5.vermont.gov/public-records all but approximately 800 of the approximately 441,000 pages of redacted documents with [B]ates-number prefix 'VT-DFR' that the State previously produced in unredacted form to Quiros and his counsel in the State enforcement action." (Doc. 98 at 13.) The State of Vermont argues that this production "obviate[es] D&V's need to redact and produce these documents to Plaintiffs." *Id.*

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

"[A]s in all matters relating to discovery, the district court has broad discretion to limit discovery in a prudential and proportionate way." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). "Discovery rules are to be accorded a broad and liberal treatment . . . to effectuate their purpose that civil trials in the federal courts no longer need be carried on in the dark." *Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (internal quotation marks omitted). "Moreover, the rules generally do not place any initial burden on parties to justify their deposition and discovery requests." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 69 (2d Cir. 2003). Nonetheless,

9

[A] district court [may] limit [t]he frequency or extent of use of the discovery methods otherwise permitted under [the federal] rules if it determines that (1) the discovery sought is unreasonably cumulative or duplicative, or more readily obtainable from another source; (2) the party seeking discovery already has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* (citing Fed. R. Civ. P. 26(b)(2)) (internal quotation marks omitted).

### B. Whether to Compel the Depositions of Former Governor Shumlin, Former Secretary Miller, Former Secretary Moulton, Attorney Kessler, and Former Capital Investment Coordinator Candido.

Plaintiffs request that the court compel the depositions of former Governor Shumlin, former Secretary Miller, former Secretary Moulton, Attorney Kessler, and former Capital Investment Coordinator Candido because they are witnesses to relevant events and may be able to confirm the veracity of Attorney Shen's Affirmative Defense No. 18. The State of Vermont asserts that Attorney Shen's deposition revealed that he did not rely upon any private conversations with State officials, and instead his assessment of the Jay Peak Projects was based upon publicly available representations and materials. On these grounds, the State of Vermont argues that deposing each of these individuals would be unlikely to elicit any information relevant to Affirmative Defense No. 18. The court agrees.

In his deposition, Attorney Shen identified no private conversations with State of Vermont officials on which he relied in choosing to direct his clients to the Jay Peak Projects. Instead, he stated that he relied only upon the VRC's support for the Jay Peak Projects which was communicated through marketing materials and public speeches. He further testified that although he met members of a State of Vermont delegation in China, he had no private conversations with them. Plaintiffs argue that "[i]t strains reason to believe that [the Shen Defendants] . . . did not have any private or in-person communication with State of Vermont officials when they traveled and attended solicitation events together." (Doc. 102 at 1.) However, having testified under oath regarding the source of his reliance on State of Vermont officials for purposes of

10

Affirmative Defense No. 18, Attorney Shen's trial testimony is cabined and he cannot claim reliance on statements not previously disclosed. There is thus no prejudice to Plaintiffs if they are precluded from deposing sources of information upon which Attorney Shen does not claim to rely.[1]

Pursuant to Fed. R. Civ. P. 26, "deposition topics should be proportional to the needs of the case [and] not unduly burdensome or duplicative[.]" *Bigsby v. Barclays Capital Real Estate, Inc.*, 329 F.R.D. 78, 81 (S.D.N.Y. 2019). Plaintiffs' stated reason for deposing the Vermont State officials is to probe the factual basis of Affirmative Defense No. 18. They have been afforded that discovery. The conduct of Vermont State officials is not otherwise relevant to their claims arising out of Attorney Shen's legal representation. Because Attorney Shen's own statements as well as the declarations of the relevant state officials reveal that depositions of those officials are not "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), the court DENIES Plaintiffs' motion to compel the depositions of former Governor Shumlin, former Secretary Miller, former Secretary Moulton, Attorney Kessler, and former Capital Investment Coordinator Candido.

### C. Whether to Compel the Continuation of Former Director Raymond's Deposition.

Plaintiffs request that the court compel the continuation of former Director Raymond's deposition because Plaintiffs have not exceeded the seven-hour time limit imposed by Fed. R. Civ. P. 30(d) and the parties never agreed to shorten the Raymond deposition. The State of Vermont proposes that former Director Raymond's deposition be continued for approximately one hour and limited to questioning by Defendants' counsel on matters relevant to Affirmative Defense No. 18. Plaintiffs argue that they are

---

[1] Plaintiffs assert that because Attorney Shen testified that "I may have seen [Attorney Kessler] on the trip to Be[i]jing, but I even don't remember what he looked like[,]" (Doc. 92-12 at 18), Attorney Kessler must be deposed. However, Plaintiffs' counsel did not ask Attorney Shen any follow-up questions about specific conversations or interactions he may have had with Attorney Kessler. Fed. R. Civ. P 26(b)(2)(C)(ii) authorizes limits on discovery when "the party seeking discovery already has had ample opportunity to obtain the information by discovery in the action[.]"

11

entitled to all seven hours of the Raymond deposition as the party that subpoenaed the witness.

The State of Vermont indicates that the Raymond deposition began at 10:06 a.m. and concluded at 4:22 p.m. It asserts that three breaks were taken for a total of twenty-three minutes, and that therefore former Director Raymond was deposed for five hours and fifty-three minutes. Plaintiffs assert that exclusive of breaks and objections, the deposition lasted five hours and one minute. For purposes of this Entry Order, the court assumes that five hours of the seven hours have been expended.

Defendants' counsel, Andrew H. Montroll, Esq., represents that he did not have the opportunity to ask former Director Raymond any questions during the August 20, 2018 deposition, but requested that he be allotted one hour to question him. The State of Vermont asserts that Plaintiffs' counsel, Russell D. Barr, Esq., verbally agreed to reserve one hour of deposition time for Attorney Montroll's questions. However, Attorney Barr states that he did not intend to cede time from his own deposition of former Director Raymond and that Attorney Montroll must issue a separate subpoena to depose former Director Raymond if he wants to question him.

"Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours." Fed. R. Civ. P. 30(d)(1). "[O]nly the time taken for the actual deposition, not breaks, counts toward the 7 hours[.]" *Condit v. Dunne*, 225 F.R.D. 100, 112 (S.D.N.Y. 2004). "The court may order that [a] deposition be terminated or may limit its scope and manner as provided in Rule 26(c)." Fed. R. Civ. P. 30(d)(3)(B).

During his deposition, former Director Raymond stated that, to his knowledge, he had never met Attorney Shen. In contrast, Attorney Shen testified, albeit vaguely, that he may have met former Director Raymond. *See* Doc. 92-13 at 15-18. Because two hours of additional questioning by Plaintiffs' counsel in light of the testimony reflecting no actual communication between former Director Raymond and Attorney Shen took place would be "unreasonably cumulative or duplicative[,]" the court GRANTS IN PART and DENIES IN PART Plaintiffs' motion to compel the continuation of former Director Raymond's deposition. Fed. R. Civ. P. 26(b)(2)(C)(i). Former Director Raymond's

12

deposition will be continued for a total period of two hours divided equally between Plaintiffs and Attorney Montroll. The court further GRANTS IN PART and DENIES IN PART the State of Vermont's motion for a protective order. The court DENIES the State of Vermont's request that only Defendants' counsel be permitted to question former Director Raymond, but GRANTS the State of Vermont's request to limit the scope of the deposition to matters related to Defendants' Affirmative Defense No. 18.

### D. Whether to Prohibit the State of Vermont from Interfering with the D&V Subpoena.

Plaintiffs request that the court intervene to "prohibit the State of Vermont's interference with the Damian & Valori Subpoena" and "sanction the State of Vermont as a result of its usurpation of the Court's authority and improper process." (Doc. 92 at 12.) The State of Vermont counters that AAG Gallagher did not attempt to interfere with the D&V subpoena, but instead "recommend[ed] to D&V that, in complying with Plaintiffs' subpoena, it adhere to the PII redaction requirements of the Vermont Protective Order and consult with its client, Mr. Quiros, and the federal [r]eceiver concerning their potentially privileged records in the State's subpoenaed document production[.]" (Doc. 98 at 16.) The State of Vermont also clarified that it does not seek to quash the D&V subpoena.

As the State of Vermont points out, there is a difference between reminding a third party of its obligations under a confidentiality agreement and directing or encouraging a third party to refuse to comply with a lawfully issued subpoena.[2] Because Plaintiffs accuse the State of Vermont of only the former and not the latter, neither sanctions nor judicial intervention is warranted. On the record before the court, there is no evidence that the State of Vermont's conduct with regard to the D&V subpoena was improper.

---

[2] *See, e.g., Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788, 795 (E.D. Pa. 2012) (sanctioning an attorney who requested that third parties refuse to comply with a subpoena); *Fox Indus., Inc. v. Gurovich*, 2006 WL 2882580, at *8 (E.D.N.Y. Oct. 6, 2006) (finding that an attorney had interfered with a subpoena issued to a third-party where he "*directed* the non-parties not to respond").

13

The court therefore DENIES Plaintiffs' motion to prohibit the State of Vermont from interfering with the D&V subpoena and DENIES Plaintiffs' motion for sanctions.

### E. Attorney's Fees.

Although the court has granted in part Plaintiffs' motion to compel the continuation of the Raymond deposition, the court finds that no attorney's fees are warranted. The parties had good faith disagreements which the court has resolved. Although judicial intervention should not have been needed, no party bears the sole or primary responsibility for it. The court thus declines to award attorney's fees pursuant to Fed. R. Civ. P. 30(d)(2).

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiffs' motion to compel the depositions of former Governor Shumlin, former Secretary Miller, former Secretary Moulton, Attorney Kessler, and former Capital Investment Coordinator Candido; GRANTS IN PART and DENIES IN PART Plaintiffs' motion to compel the continuation of former Director Raymond's deposition; and DENIES Plaintiffs' motion to prohibit the State of Vermont from interfering with the D&V subpoena. (Doc. 92.) The court GRANTS IN PART and DENIES IN PART the State of Vermont's request for a protective order and ORDERS that former Director Raymond's deposition shall be limited to two hours of questioning divided equally between the parties on matters relevant to Affirmative Defense No. 18. (Doc. 98.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 8th day of August, 2019.

Christina Reiss, District Judge
United States District Court

14